IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

LINDA BRUCE,                          )
                                      )
     Plaintiff,                       )
                                      )
          v.                          )     1:14cv18 (JCC/TRJ)
                                      )
THE HARTFORD,                         )
                                      )
and                                   )
                                      )
THE BOOZ ALLEN HAMILTON, INC.         )
LONG TERM DISABILITY PLAN,            )
                                      )
     Defendants.                      )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Hartford

Life and Accident Insurance Company ("Hartford") and Booz Allen

Hamilton Long Term Disability Plan's (the "Plan") (collectively

"Defendants") Motion for Summary Judgment or, in the

Alternative, For Remand, [Dkt. 59], and Plaintiff Linda Bruce's

("Plaintiff" or "Bruce") Motion for Summary Judgment, [Dkt. 58].

For the following reasons, the Court will grant Defendants'

Motion and will deny Plaintiff's Motion.

## I.   Background

Plaintiff has filed this action seeking long-term

disability benefits under § 502(a)(1)(B) of the Employee

1

Retirement Income Security Act of 1974, 29 U.S.C. §

1132(a)(1)(B) ("ERISA").

     A.    <u>Factual Background</u>

       1.   <u>The Parties and the Plan</u>

     Bruce was a professional administrator for Booz Allen

Hamilton, Inc. ("Booz Allen") and participated in an employee

welfare benefit plan ("the Plan") sponsored by Booz Allen.

(H1637.)  The Plan is at least partially funded by a long term

disability ("LTD") insurance policy ("the Policy") issued by

Hartford. (H2788.)  The named Plan Administrator is Booz Allen

Hamilton, Inc.  (H2816.)  Hartford is the "claims fiduciary for

benefits provided under the Policy."  (H2816.)  Hartford has

"full discretion and authority to determine eligibility for

benefits and to construe and interpret all terms and provisions

of the Policy."  (H2816.)  The Policy defines "Disability or

Disabled" as follows:

> **Disability or Disabled** means You are
> prevented from performing one or more of the
> Essential Duties of:
>
> 1) Your Occupation during the Elimination
> Period; and
>
> 2) Your Occupation following the Elimination
> Period, and as a result Your Current Monthly
> Earnings are less than 80% of Your Indexed
> Pre-disability Earnings.

(H2807.)

2.   <u>Bruce's LTD Claim</u>

Plaintiff became unable to work full time following a car accident on or about October 19, 2010.  Plaintiff suffers from a "lower lumbar condition, related pain, obesity and medication side effects resulting in severe functional limitations." (Pl. Mem. ¶ 1.)  Plaintiff was approved for short term disability benefits, which were paid for six months.  (*Id.* at ¶ 2.)  On May 4, 2011, Hartford notified Plaintiff that her claim for LTD benefits had been approved effective April 19, 2011.  (H11.)  Hartford also required Plaintiff to apply for Social Security Disability Benefits.  (H21.)  Under the Policy, Plaintiff was "required to provide continuing proof that she was disabled from working in her sedentary occupation." (Def. Mem. at 4.)

In July 2012, Plaintiff's internist, Dr. Michon Bechamps ("Dr. Bechamps"), submitted to Hartford an Attending Physician's Statement of Functionality.  (H306.)  The report states that plaintiff reported "back pain and pressure," "peripheral neuropathy" and physical examination findings revealed limited lumbar spine range of motion.  (H306.)  Dr. Bechamps reported that Plaintiff's progress was unchanged and the expected current duration of these restrictions or limitations was for her "lifetime." (H307.)  Dr. Bechamps's office notes from June 2012, however, suggest some improvement

3

in Plaintiff's condition.  (Def. Mem. at 4.)  These notes state "back pain is somewhat better" and that "neuropathy is somewhat better."  (H308-10.)  Additionally, Defendants state that Dr. John Choi, a neurologist, submitted a nerve conduction study ("NCS") and an electromyography examination ("EMG") showing normal results.  (Def. Mem. at 5.)  Plaintiff disagrees with these assertions, noting that Dr. Bechamps's reports show numbness, vertigo, peripheral neuropathy, obstructive sleep apnea, and back pain, and Dr. Choi noted "numbness and vertigo." (Pl. Mem. at 4-5.)

On November 28, 2012, Hartford referred Plaintiff's claim to MES Solutions ("MES") a third party vendor.  MES assigned Plaintiff's case to Dr. Albert C. Fuchs.  In December 2012, Dr. Fuchs provided a paper review based on the medical records from Drs. Choi and Bechamps, and discussion with Dr. Bechamps.  (H2363-66.)  Plaintiff asserts that Dr. Fuchs's report presents "little more than a selective summary of the medical evidence followed by naked conclusions" because Dr. Fuchs's report was issued without the benefit of examination or testing.  (Pl. Mem. at 6.)  Defendants point to portions of Dr. Fuchs's report where he discussed Plaintiff's case with Dr. Bechamps.  (Def. Mem. at 5.)  Defendants note that the report indicates that Dr. Bechamps and Dr. Fuchs agreed that "Plaintiff was functionally impaired and there was evidence supporting her

claimed muscular back pain" but also that Plaintiff's symptoms did not correlate with objective findings.  (Def. Mem. at 5; H2365.)

       3.  <u>Appeal Process</u>

       On February 4, 2013, Plaintiff sent a letter to Hartford appealing the denial of her LTD benefits.  (H2344-46.) On February 7, 2013, Plaintiff requested that Hartford disregard her initial appeal letter and stated that she had retained counsel in this matter.  (H239.)  On February 14, 2013, Plaintiff's counsel wrote to Hartford requesting a copy of the claims file, among other information, and noting that the request for information did not constitute an appeal of benefits.  (H222-23.)  On February 15, 2013, Hartford wrote to Plaintiff acknowledging receipt of the February 14, 2013 letter and stating "we will consider the appeal incomplete to allow you time to submit any additional information."  (H51.)  The letter further states, "if we do not receive additional information by August 5, 2013 we will consider your appeal complete at that time and we will evaluate your appeal using the information currently in your claim file."  (H52.)  Additionally, Hartford stated, "[o]nce you submit your complete appeal, we will make an appeal decision as soon as possible and should make the decision within 45 days of the receipt of the request.  If there are special circumstances that prevent us from making the decision

in that time, the evaluation period can be extended by an additional 45 days." (H52.)

On August 2, 2013, Plaintiff sent Hartford her additional documentation in support of her appeal. (H2054.) The letter contained a list of files scanned to a CD-R. (H2054.) Hartford did not receive this CD-R on August 2, 2013, although the parties disagree on where in the process the CD-R went missing. On August 15, 2013, Hartford wrote to Plaintiff, informing her that it did not receive the CD-R. (H1672.) On August 23, 2013, Plaintiff submitted further documentation to be made part of her appeal. (H1837.)

On September 11, 2013, Hartford wrote to Plaintiff, acknowledging receipt of the August 15, 2013 letter, the CD-R, and the documents submitted on August 23, 2013. (H1667.) In this letter, Hartford informed Plaintiff's counsel that "clarification of Ms. Bruce's capabilities is necessary" and that Hartford had contacted Dr. Bechamps to request her permission to have Plaintiff participate in an FCE. (*Id.*) Plaintiff's counsel responded that day that "should you wish to examine Ms. Bruce, you will need to restore her benefits including all back benefits owed." (H1806.) On October 4, 2013, Hartford informed Plaintiff that it was unable to make a decision on her appeal during the initial 45-day period, and that it would make the appeal determination within 45 days of

the date she completed the FCE.  (H1666.)  On October 7, 2013, a
third party vendor engaged by Hartford, D & D Associates, wrote
to Plaintiff stating that an FCE had been scheduled for October
30, 2013.  (H1813.)  On October 17, 2013, Plaintiff's counsel
wrote to D & D associates stating that the company had
impermissibly contacted Plaintiff in excess of the 90 day review
period and that an evaluation would occur only if Plaintiff's
claim was paid in full to that date.  (H1805.)  On October 30,
2013, Hartford wrote to Plaintiff stating that it would make an
appeal decision within 45 days of Plaintiff's completion of the
FCE.  (H1664.)  On October 30, 2013, Plaintiff responded to
Hartford, stating that Hartford had exceeded the timeframes
permitted under ERISA and enclosed a copy of the Complaint filed
in this case.  (H1794.)

     B.   Procedural Background

     On October 30, 2013, Plaintiff filed her Complaint
against Hartford and the Booz Allen Hamilton, Inc. Long Term
Disability Plan.  [Dkt. 1.]  On November 25, 2013, Defendants
filed their Answer and Motion to Transfer Case pursuant to 28
U.S.C. § 1404(a).  [Dkts. 5-6.]  On December 16, 2013, this case
was transferred to this Court from the United States District
Court for the District of Columbia.  [Dkt. 10.]  On May 23,
2014, Plaintiff filed her Motion for Summary Judgment and
accompanying memorandum, [Dkt. 58], and Defendants filed their

Motion for Summary Judgment, or in the Alternative, For Remand, [Dkt. 59]. On June 9, 2014, Plaintiff filed her opposition to Defendants' Motion for Summary Judgment, [Dkt. 62], and Defendants filed their opposition to Plaintiff's Motion for Summary Judgment, [Dkt. 63]. On June 18, 2014, both parties filed their reply briefs. [Dkts. 66, 67.]

Defendants' Motion for Summary Judgment or, in the Alternative for Remand, and Plaintiff's Motion for Summary Judgment are now before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and quotation marks omitted). In the

context of an action brought under ERISA, however, summary
judgment is "merely the conduit to bring the legal question
before the district court and the usual tests of summary
judgment . . . do not apply." *Tobey v. Keiter, Stephens, Hurst,
Gary & Shreaves*, No. 3:13-CV-315, 2014 WL 61325, at *3 (E.D. Va.
Jan. 7, 2014) (citations and quotation marks omitted).

As a general matter, "judicial review of an ERISA plan
administrator's decision is 'under a *de novo* standard unless the
plan provides to the contrary.'" *Carden v. Aetna Life Ins. Co.*,
559 F.3d 256, 259-60 (4th Cir. 2009) (quoting *Metropolitan Life
Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008)).  "But when the
plan language grants the administrator discretionary authority,
review is conducted under the familiar abuse-of-discretion
standard." *Id.*  Here, Hartford has "full discretion and
authority to determine eligibility for benefits and to construe
and interpret all terms and provisions of the Policy."  (H2806.)
"This provision applies when the interpretation of The Policy is
governed by the Employee Retirement Income Security Act of 1974,
as amended (ERISA)."  (*Id.*)

### III.   Analysis

#### A.   Failure to Exhaust Administrative Remedies

Defendants argue that summary judgment should be
entered for Hartford and the Plan because Plaintiff failed to
exhaust administrative remedies prior to filing her suit.  (Def.

9

Mem. at 10.)  The parties agree that as a general matter, administrative exhaustion is required.  (Pl. Opp'n at 15-16.) "ERISA does not contain an explicit exhaustion provision." *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989). "Nonetheless, an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132." *Id.*  The requirement of administrative exhaustion "gives force to ERISA's explicit requirement that benefit plans covered by ERISA provide internal dispute resolution procedures for participants whose claims for benefits have been denied." *Smith v. Sydnor*, 184 F.3d 356, 361 (4th Cir. 1999).

### 1.   Date Review Commenced

The parties disagree, however, on the review date to which the governing regulations should be applied.  Defendants assert that the appeal date was August 23, 2013 – the date the appeal was considered complete by Hartford.  Plaintiffs contend that the review period commenced on August 2, 2013.

Under ERISA, Hartford had a total of 90 days to decide Plaintiff's appeal.  ERISA's implementing regulations provide an administrator with an initial 45 day review period, followed by a 45 day extension if additional time is needed under the circumstances. *Barnes v. Hartford Life & Acc. Ins. Co.,* No.

3:10-CV-72, 2011 WL 5509986, at *9 (N.D.W. Va. Nov. 10, 2011)

(citing 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3)(i)).  The Policy

itself likewise provides:

> The Insurance Company will make a final
> decision no more than 45 days after it
> receives your timely appeal.  The time for
> final decision may be extended for one
> additional 45 day period provided that,
> prior to the extension, the Insurance
> Company notifies you in writing that an
> extension is necessary due to special
> circumstances, identifies those
> circumstances and gives the date by which it
> expects to render its decision.

(H2819.)  Additionally, the Policy provides that "[i]f your

claim is extended due to your failure to submit information

necessary to decide your claim on appeal, the time for decision

shall be tolled from the date on which the notification of the

extension is sent to you until the date we receive your response

to the request."  (H2819.)

On February 4, 2013, Plaintiff filed an appeal letter.

(H2344-46.)  On February 7, 2013, Plaintiff asked Hartford to

disregard the initial appeal letter.  (H239.)  By letter dated

February 15, 2013, Hartford agreed to hold Plaintiff's appeal in

abeyance so she could submit additional information.  (H52.)

The letter further states "if we do not receive additional

information by August 5, 2013 we will consider your appeal

complete at that time."  (H52.)  Additionally, the letter

provides that once Plaintiff had submitted her "complete appeal" Hartford would begin the review process. (H52.)

On August 2, 2013, Plaintiff submitted a letter enclosing additional documentation in support of her appeal on a CD-R. (H2054.) The administrative record reflects that this documentation was not received by Hartford, (H1672, H2054), although the parties disagree as to whose oversight is to blame. On August 15, 2013, Plaintiff mailed the CD-R to Hartford and on August 23, 2013, Plaintiff mailed additional documents for the appeal. (H1667.) On September 11, 2013, Hartford informed Plaintiff that "with the receipt of this additional information we now have the complete appeal in our possession" and that Hartford would make the appeal decision within 45 days of August 23, 2013. (H1667.)

Under the regulations, the period of time in which a benefit determination must be made begins "at the time when a claim is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make benefit determination accompanies the filing." 29 C.F.R. § 2560.503-1(i)(4). The Policy provides that "[t]he Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim." (H2819.) Defendants argue that the appeal was held in abeyance to allow Plaintiff to submit further

documentation and that because Hartford had not received *any* documentation on August 2, August 23 is the commencement date for review. (Def. Mem. at 15.)

A plain reading of the regulations indicates that August 2, not August 23, was the proper date for commencement of the review process. The August 2 letter was sufficient to invoke Plaintiff's right to appeal, even without receipt of the underlying documentation. *See, e.g., Roach v. Kaiser Permanente Long Term Disability Plan*, No. CV 08-4746-JFW AGRX, 2009 WL 1357394, at *7 (C.D. Cal. May 12, 2009) ("MetLife had a responsibility under ERISA to determine Plaintiff's appeal, even though it never received any additional comments, arguments, or documentation from Plaintiff"); *Picton v. Prudential Ins. Co. of Am.*, No. C11-1704MJP, 2012 WL 4021799, at *5 (W.D. Wash. Sept. 11, 2012) (finding that defendant "erred by calculating the 45-day period from the date it deemed Plaintiff's appeal 'completed,' i.e., the date his last additional medical documentation arrived"). Accordingly, August 2 should have been used as the commencement date for the review process.

Defendants are correct, however, in asserting that even using August 2, 2013, as the commencement date for the review process, Plaintiff's suit is premature. (Def. Reply at 9.) Plaintiff filed suit on October 30, 2013, which falls 89 days from August 2, 2013, rather than the required 90.

2.   <u>Tolling and Functional Capacity Examination</u>

Defendants further argue that regardless of the date that the appeal is deemed filed in accordance with the plan's procedures, Plaintiff did not exhaust administrative remedies because she filed suit when the administrative process had been tolled.  (Def. Mem. at 16.)   The regulations provide that:

> In the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)(2)(iii)(B), or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. § 2560.503-1.  On September 11, 2013 – 40 days from August 2, 2013 - Hartford notified plaintiff that an FCE was needed to clarify Plaintiff's capabilities.  (H1667.)  That day, Plaintiff, through counsel, responded to Hartford, stating "Ms. Bruce has already undergone a functional capacity evaluation as indicated in the filed appeal. . . . Should you wish to examine Ms. Bruce, you will need to restore her benefits including payment of all back benefits owed."  (H1806.)  On October 4, 2013, Hartford informed Plaintiff: "We are unable to make a decision on the appeal during the initial 45-day period because the FCE has not been conducted.  We will make our appeal determination within 45 days of the date when Ms. Bruce

14

completes the FCE." (H1666.)  Therefore, Defendants argue, the review period was tolled as of October 4, 2013.  (Def. Mem. at 16.)

Plaintiff argues that Hartford's request for an FCE was without authority, and that it therefore did not act to toll the administrative process.  (Pl. Reply at 10-11.)  Plaintiff asserts that there is no authority under the plan document which specifically allows the administrator to request an FCE and states that the provision allows only "examination by a medical or vocational professional."  (Pl. Opp'n at 12 citing H2804.)

Review of the Policy does not bear this out.  The Policy provides that Hartford has a right to require examination by "a Physician, vocational expert, *functional expert*, or other medical or vocational professional of Our choice." (H2804) (emphasis added).  Contrary to Plaintiff's assertions, there is clear authority allowing Hartford to request an FCE; the Policy provision does not appear to be at all ambiguous on Hartford's ability to request examination by a functional expert. Accordingly, under the terms of the Policy, Hartford was within its authority to toll the administrative process, pending Plaintiff's completion of the FCE.

Plaintiff appears to further argue that because Defendants failed to timely request a 45-day extension pursuant to 29 C.F.R. § 2560.503-1(i)(l)(i), Hartford did not comply with

15

ERISA's procedural requirements. (Pl. Opp'n at 22.) Earlier in Plaintiff's brief, however, she states that "the actual date for completion of the appeal should have been 90 days following the date of filing the appeal, 8/2/13, resulting in an ultimate due date for the claim decision by Defendants on 10/30/13." (Pl. Opp'n at 11; *see* Pl. Reply at 10-11.) Throughout the administrative process Plaintiff sought to hold Hartford to a "90 day review period." (H1805.) As in *Hall v. United of Omaha Life Ins. Co.*, 741 F. Supp. 2d 1348, 1355-56 (N.D. Ga. 2008), where the court found that the plaintiff "waited the full period of the extension for a decision, which reasonably indicated" to the insurance company that its letter was an adequate extension request, Plaintiff cannot now maintain that Hartford should have issued a decision 45 days from August 2, 2013. *Hall*, 741 F. Supp. 2d at 1359.

In addition to tolling the review period, the Court agrees that failure to submit to the FCE is itself a failure to exhaust administrative remedies. Defendants point the Court to *Hall,* 741 F. Supp. 2d at 1355-56, as instructive on this point. In *Hall*, the court found that the plaintiff's refusal to "attend the IME resulted in him not exhausting administrative remedies." *Id*. at 1355-1356. The *Hall* court found that an independent medical examination ("IME") scheduled "approximately ten days prior to expiration of the extended deadline" was nevertheless

16

"a legitimate part of [the insurer's] investigation of [plaintiff's] claim and not an attempt by [the insurer] to abuse the ERISA deadlines." *Id.* at 1354.  Other district courts have similarly found that refusal to attend an IME amounts to a failure to exhaust.[1]  *See Hunter v. Met. Life Ins. Co.*, 251 F. Supp. 2d 107, 111-112 (D.D.C. 2003) ("This appeal process, however, has not been completed because Plaintiff refused to have an IME . . . This amounts to a failure to exhaust."); *Zalka v. Unum Life Ins. Co. of Am.*, 65 F. Supp. 2d 1369, 1370-71 (S.D. Fla. 1998) ("By refusing to submit to the IME and immediately filing suit, however, Plaintiff precluded Defendant from completing its administrative review of her claim.  Plaintiff has thus not exhausted administrative remedies.").  As in *Hunter,* Plaintiff's failure to undergo the examination "terminated the administrative review of her claim prematurely." *Hunter*, 251 F. Supp. 2d at 112.  As a result, Hartford has not rendered a final decision on the appeal, leaving this Court with nothing to review.  *Id.*  ("The Court cannot properly address plaintiff's claim because there is no 'fully considered' or 'reasoned' explanation to review.").

---

[1] These cases concern failure to attend an IME properly requested by an insurer.  Because the Policy specifically allows Hartford to require an FCE, the Court sees no reason to distinguish between refusal to submit to an FCE and refusal to submit to an IME.

3.   Futility

Plaintiff argues, however, that she is "excused from the ERISA exhaustion requirement under the futility exception." (Pl. Opp'n at 16.)   The requirement of exhaustion may be suspended if a plaintiff makes a "clear and positive" showing of futility.   *Makar*, 872 F.2d at 83.   The futility exception "has been applied only when resort to administrative remedies is 'clearly useless.'"   *Frye v. Met. Life Ins. Co.,* No. CIV.A. 3:10-0107, 2010 WL 5343287, at *12 (S.D.W. Va. Dec. 20, 2010) (quoting *Kern v. Verizon Communs. Inc.,* 381 F. Supp. 2d 532, 537 (N.D.W. Va. 2007)).   In *O'Bryhim v. Reliance Std. Life Ins. Co.,* for example, this Court found that a plaintiff had made a clear and positive showing of futility where he had appealed the "administrative decision three separate times" and, following a trial, the case had already once been remanded to the Plan Administrator.   997 F. Supp. 728, 731 (E.D. Va. 1998), *aff'd*, 188 F.3d 502 (4th Cir. 1999).   Likewise, in *Nessell v. Crown Life Ins. Co.*, this Court found that the plaintiff had made a clear and positive showing of futility where she was told that the insurance company's decision was "final and irrevocable and [the insurer] would not consider any further appeals of its decision, that from [the insurer's perspective] the matter was closed."   92 F. Supp. 2d 523, 529 (E.D. Va. 2000).

18

Plaintiff argues that Hartford's conduct was "not timely or reasonable, and was consistently adversarial in nature despite its fiduciary duties to Ms. Bruce." (Pl. Opp'n at 16.) Plaintiff asserts that Hartford "wanted to match evidence for evidence in this case to create a better denial." (*Id.* at 16.) The record here does not reflect that further pursuit of administrative remedies would be futile. Instead, the record reflects a continuing process in which Hartford and Plaintiff were in communication regarding Plaintiff's appeal. This review process was disrupted because of the disagreement regarding Hartford's request for Plaintiff to attend the FCE. The evidence in the administrative record does not demonstrate that further pursuit of administrative remedies would be clearly useless. Indeed, a letter sent to Plaintiff's counsel on October 30, 2013 regarding the disputed FCE suggests that this examination was ordered, at least in part, because of Plaintiff's criticism of Hartford for ordering "an independent peer review and not a physical evaluation." (H1664.)

Evidence in the administrative record of Hartford's conduct during the appeal process does not rise to the level of a clear and positive showing of futility. Unlike *O'Bryhim*, where the plaintiff had pursued a final appeal three times, Plaintiff here did not complete one appeal process; unlike *Nessell*, here the insurance company has not indicated that it

19

considers the matter complete.  Accordingly, the Court will
enter summary judgment for Hartford and dismiss this case
without prejudice, in order to allow Plaintiff to exhaust
available administrative remedies.

       B.   <u>Monetary Penalties</u>

       Defendants also seek summary judgment on Plaintiff's
claim for monetary penalties.  Plaintiff alleges that Defendants
are liable for monetary penalties for failure to comply with
written requests for information pursuant to 29 U.S.C. §
1132(c)(1).  Plaintiff alleges that she "sent multiple requests
for claims file documentation which required production of all
summary plan documents, governing claims manual provisions or
handling instructions under which the claim was reviewed."
(Compl. ¶ 18.)  According to the Complaint, Defendants failed to
produce this documentation.  (Compl. ¶ 19.)  Defendants argue
that summary judgment should be entered on Plaintiff's claim for
monetary penalties because neither Hartford nor the Plan is the
"plan administrator" as set forth in the Plan.

       Section 1132(c)(1)(B) provides that

> "[a]ny administrator . . . who fails or
> refuses to comply with a request for any
> information which such administrator is
> required by this subchapter to furnish to a
> participant or beneficiary . . . within 30
> days after such request may in the court's
> discretion be personally liable to such
> participant or beneficiary in the amount of
> up to [$110] a day from the date of such

20

> failure or refusal, and the court may in its
> discretion order such other relief as it
> deems proper.

29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1 (increasing

the penalties under this section from $100 to $110 per day).

The term "administrator" is defined in 29 U.S.C. § 1002(16)(A)

as:

> (i) the person specifically so designated by
> the terms of the instrument under which the
> plan is operated;
>
> (ii) if an administrator is not so
> designated, the plan sponsor; or
>
> (iii) in the case of a plan for which an
> administrator is not designated and a plan
> sponsor cannot be identified, such other
> person as the Secretary may by regulation
> prescribe.

29 U.S.C. § 1002(16)(A).  In this case, the plan expressly

states that Booz Allen Hamilton, Inc., is the Plan

Administrator, (H2816), "thus rendering [Booz Allen Hamilton,

Inc.] the one and only 'administrator' pursuant to section

1002(16(A)(i), with the duty to produce plan documents." *Mondry*

*v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009).

Hartford is the insurer and claims fiduciary, not the named plan

administrator.  (H2818.)  As the Seventh Circuit explained in

*Mondry*, "this court and others have held that liability under

section 1132(c)(1) is confined to the *plan administrator* and

have rejected the contention that other parties, including

claims administrators, can be held liable for the failure to supply participants with the plan documents they seek." *Id.* (emphasis added) (collecting cases).

Likewise, the Plan itself is not a "plan administrator." *See Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996) ("Section 1132(c) authorizes the imposition of sanctions only for the failures or refusals of the 'plan administrator' and not those of the 'plan.'"); *Groves v. Modified Ret. Plan for Hourly Paid Emps. of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 116 (3d Cir. 1986) ("The terms 'plan' and 'plan administrator' refer to two entirely distinct actors."). Therefore, neither Hartford nor the Plan can be held liable for statutory penalties under 29 U.S.C. § 1132(c).

Defendants further argue that the Plan has no record of receiving the February 14, 2013 letter requesting documents and that Plaintiff's Complaint alleges only a failure to produce claim file documents under ERISA regulations, which does not provide a basis for imposing statutory penalties under § 1132(c)(1)(B). Because neither Hartford nor the Plan can be subject to statutory penalties under § 1132(c), further discussion of the communications and any types of documents requested is unnecessary. Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claim for monetary penalties.

C.  <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff in her motion for summary judgment asks the Court to reach the merits of her case and order reinstatement of her LTD benefits.  Because Plaintiff must first exhaust administrative remedies, the Court cannot order this relief, and Plaintiff's motion for summary judgment will be denied. Likewise, Plaintiff's motion for summary judgment on statutory penalties will be denied for the reasons stated above.  Neither named defendant is the "Plan Administrator" as defined under ERISA.  Accordingly, the Court will deny Plaintiff's motion for summary judgment.

**IV. Conclusion**

For the reasons stated above, the Court will grant Defendants' motion for summary judgment and dismiss this case without prejudice to permit Plaintiff to pursue administrative remedies.  The Court will deny Plaintiff's motion for summary judgment.

An appropriate order will follow.

_____
/s/

July 10, 2014                James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE